CITY OF CHICAGO v. GOODRICH TRANSIT CO.

(Circuit Court of Appeals, Seventh Circuit. April 23, 1912.)

No. 1,864.

1. NAVIGABLE WATERS (§ 19*)—OBSTRUCTION BY WATERWORKS CRIB—INJURY TO VESSEL BY COLLISION—LIABILITY.

The city of Chicago and a lake steamer approaching the city in a dense fog both *held* in fault for a collision between the steamer and a waterworks crib maintained by the city in the lake near the harbor entrance; the city because those in charge of the crib failed to sound proper fog signals in addition to the lights, and the steamer because the master and mate, both of whom were entirely familiar with the harbor and the position of the crib, were negligent in maintaining a speed of 6½ miles an hour through the fog, which obscured the lights, and with the wind behind them.

[Ed. Note.—For other cases, see Navigable Waters, Cent. Dig. §§ 59–63, 68–72; Dec. Dig. § 19.*]

2. NAVIGABLE WATERS (§ 19*)—SPEED IN FOG—WHAT CONSTITUTES "MODERATE SPEED."

What constitutes a "moderate speed" on the part of a vessel in a fog cannot be determined by any hard and fast rule, but depends on the dangers which are known or should be anticipated in the particular case.

[Ed. Note.—For other cases, see Navigable Waters, Cent. Dig. §§ 59–63, 68–72; Dec. Dig. § 19.*

For other definitions, see Words and Phrases, vol. 5, pp. 4551, 4552.

Collision rules, speed of steamers in fog, see note to The Niagara, 28 C. C. A. 532.]

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Illinois.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Suit in admiralty by the Goodrich Transit Company, as owner of the steamer City of Racine, against the City of Chicago. Decree for libelant, and respondent appeals. Reversed.

William H. Sexton, Corp. Counsel, of Chicago, Ill. (Charles M. Haft and Bernard J. Mahony, Asst. Corp. Counsel, both of Chicago, Ill., of counsel), for appellant.

Charles E. Kremer, of Chicago, Ill., for appellee.

Before KOHLSAAT and MACK, Circuit Judges, and HUMPHREY, District Judge.

HUMPHREY, District Judge. On July 30, 1909, the steamer City of Racine, bound from Racine to Chicago, struck the Chicago Avenue waterworks crib, belonging to the city of Chicago and located in Lake Michigan, near the entrance to the harbor. The hour was 4:02 in the morning. There was a heavy fog, through which the vessel had been running for two hours; but the fog enveloped the crib less than a half hour before the collision. The wind was due north, blowing 10 miles per hour. The vessel was going almost south at the rate of 12 to 13 miles per hour, and checked to half that speed 12 minutes before the collision. The light on the crib was burning, but through the dense fog could not be seen more than 200 feet. The evidence is conflicting as to whether any fog signal was sounded from the crib. The crib keepers testified that the bell was ringing constantly for a half hour before the accident, and the crew testified that they were listening for the sound, but did not hear it. The trial court found that the collision was caused wholly by the negligence of the appellee, and rendered judgment accordingly.

[1] The city having placed near the mouth of the harbor an obstruction to navigation, the legal obligation rested upon it to provide on the crib and to keep in use suitable fog signals. This record clearly shows that a light alone is not an efficient fog signal for safe navigation. An audible signal was necessary under the law. If this were all, the case would present no difficulty. But the law looks to the conduct of those on the steamer, as well as those on the crib, which raises the more complex question as to the duty of a captain of a ship approaching a harbor through a fog, and particularly the question of moderation of speed.

Regardless of any negligence on the part of appellee, the vessel was bound to proceed with such caution as a safe navigator would observe, in view of those dangers of weather and location which were within his knowledge. The captain of the Racine was as familiar with all the dangers growing out of the time, place, and accompanying circumstances as any man could be. He had passed over the route thousands of times (he testified 3,000 or 4,000 times). He knew the location, not only of the crib in question, but numerous other cribs in the vicinity, some of which he had passed a short time before the accident. The crib which caused the collision had been there over 20 years, and the steamer Racine had passed by it all those years. The captain and his mate had passed it also during all those years,

either in this boat or some other. There was no danger known to navigation, at the point in question, which was not familiarly known to these two men—how far the light would throw its beams, the distance which sound waves would carry, the caprices of both, how each would be affected by atmospheric conditions, rain, snow, wind, or fog and by the direction and velocity of the wind. No authority could have a better knowledge than this captain and mate as to the uncertainty of receiving signals by the medium of the eye or the ear at the time and place in question.

We think the dangers of the situation, as he knew them to exist, required a higher degree of care from the master of the steamer than he exercised. He had run through the fog for about two hours at full speed, about 13 miles per hour and sounding his fog whistle every minute. It was then 3:50 a. m., and he testifies that he reduced speed one-half, knowing he was within 10 or 12 minutes of the crib. The steamer and the wind were going in the same direction; the wind 10 miles per hour. The captain was waiting for signals to tell him where the crib was, although he had estimated it exactly; for he struck it at 4:02 a. m., just where he thought he would reach it. He knew that the signal to the eye would be shortened by the fog, and that the signal to the ear would be shortened by the wind, yet, with a full knowledge of these facts, he speeded along at 6½ miles per hour, when he might have had the vessel under such control as to avoid injury. If the officers of the vessel needed anything to impress them with the uncertainty of crib signal by light or bell in the given condition of fog and wind, they had it in the fact that they had recently passed other cribs, where they usually saw and heard signals, and that they saw and heard none that morning.

[2] Appellee, to sustain this decree, relies with some confidence upon the utterance of this court in the case of The Conestoga, 178 Fed. 42, 101 C. C. A. 170. We do not think that case can be held to control this. The decree, which was reversed in the Conestoga Case, was based upon a rule of navigation requiring the Conestoga to reduce speed to a rate no higher than was necessary to maintain steerageway, and the court held that the facts of that case did not justify so drastic a rule. The question there, as here, was as to moderation of speed—a mixed question of law and fact as to the sufficiency of the moderation. The two cases as to the surrounding facts are not on all fours. The Conestoga was going 4½ miles per hour; the Racine, 6½. It does not appear that the captain had such knowledge of his dangerous proximity to the crib in the Conestoga Case as in the case at bar. No hard and fast rule as to moderation of speed can be enforced in every case, and the citing of cases will serve no good purpose. The rate of speed must be commensurate with those dangers which are known or must be anticipated. Judged by this reasonable standard, we think there was negligence on the part of appellant, which contributed to the injury. Appellant should therefore pay one half the damages and costs, and appellee the other half.

Decree reversed, and cause remanded, with directions to proceed in accordance with this decision.